IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BARRY H. DAYTON,<br><br>individually and on behalf<br>of all others similarly situated<br><br>      Plaintiff,<br><br>      v.<br><br>OAKTON COMMUNITY COLLEGE,<br>MARGARET LEE, JOIANNE SMITH,<br>MICHAEL ANTHONY, KARL<br>BROOKS, MAYA EVANS,<br>TOM HAMEL, COLETTE HANDS,<br>BONNIE LUCAS, and MUM<br>MARTENS.<br><br>      Defendants. | No. 1:16-cv-06812 |

**NAMED PLAINTIFF'S REPLY IN SUPPORT OF
COLLECTIVE AND CLASS CERTIFICATION**

Nathan D. Eisenberg (Ill. Bar No. 6307413)
nde@previant.com
Sara J. Geenen
sjg@previant.com
Erin F. Medeiros
efm@previant.com
THE PREVIANT LAW FIRM, S.C.
310 West Wisconsin Ave. Suite 100 MW
Milwaukee, WI 53203
Telephone: 414/271 4500
Fax: 414/271 6308

## INTRODUCTION

Collective certification of Named Plaintiff, Barry Dayton's, claims under Section 7(b) of the Age Discrimination in Employment Act, 29 U.S.C. § 626(b), and class certification, pursuant to Fed. R. Civ. P. 23, of his claims under 42 U.S.C. § 1983 and for violations of Illinois Const., Art. XII, § 5 is appropriate in this case. Named Plaintiff and members of the classes were subjected to a uniform policy by Oakton Community College (the "College"), its President, and the President's Council of not employing as faculty any individual who is an annuitant of the State University Retirement System ("SURS"; and "the Policy"). The Policy impacted all potential class members identically.

The College's opposition to collective and class certification is based on material misstatements of law or fact. The fact that adjunct and part time faculty had no "expectation" of continued employment does not relieve the College from liability for illegal discrimination. Where the College promulgated a campus-wide Policy of not employing SURS annuitants, the Policy of non-renewal is an adverse employment action creating liability for the Defendants. *See e.g. Matseu-Anderegg v. Sch. Dist. of Whitefish Bay,* 304 F.3d 618, 625 (7th Cir. 2002); *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 501 (2d Cir. 2009); *Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315, 320 (3d Cir. 2008). To hold otherwise, would be to "effectively rule that current employees seeking a renewal of an employment contract are not entitled to the same statutory protections under the discrimination laws as prospective employees." *Leibowitz,* 584 F.3d at 500. This is equally true for retired faculty who return to teaching on an "at-will" basis. *See e.g. Dunn v. Lyman School District 42-1,* 35 F.Supp.3d 1068, 1081 (S.SD 2014).

Similarly, Defendants mischaracterize the issue of damages as an element of Named Plaintiff's claims for liability. Once Defendants took an adverse employment action by

prohibiting employment of adjunct annuitants sufficient to establish liability, the need for individual damages determinations does not defeat class certification under Rule 23(b)(3). *Arreola v. Godinez,* 546 F.3d 788, 801 (7th Cir. 2008); Fed. R. Civ. P. 23(c)(4). Neither *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 180 L. Ed. 2d 374 (2011) nor *Jamie S. v. Milwaukee Public Schs.,* 668 F.3d 481 (7th Cir. 2012) changed the law to defeat class certification where an injury results from a defendant's standardized conduct toward proposed class members, such as generalized policies that affect all class members in the same way. *Corey H. v. Bd. of Educ. of City of Chi.,* 2012 U.S. Dist. LEXIS 100316 (N.D. Ill. July 19, 2012).

Class and Collective certification are appropriate in this case.

## ARGUMENT

I. **COLLECTIVE CERTIFICATION IS APPROPRIATE, WHERE NON-RENEWAL OF FACULTY CONTRACTS DUE TO AGE CREATES A CLAIM UNDER THE ADEA.**

Defendants' opposition to Named Plaintiff's motion for collective certification of his claims and those of individuals similarly situated under the ADEA on the incorrect assertion that Named Plaintiff can state no claim under the ADEA where part-time and adjunct faculty are a labor pool "in flux" with no right to continued employment with the College. "Such argument misses the point that is no 'at-will' defense to a federal discrimination complaint." *Washington v. Lake Cty.,* 969 F.2d 250, 256 (7th Cir. 1992). Numerous courts have held that non-renewal of employment contracts is an adverse action giving rise to claims under federal discrimination statutes. *See Matseu-Anderegg v. Sch. Dist. of Whitefish Bay,* 304 F.3d 618, 625 (7th Cir. 2002); *Griffin v. Board of Regents of Regency Universities,* 795 F.2d 1281 (7th Cir. 1986) (assuming that refusal to renew contract was adverse employment action under Title VII). "An employee seeking a renewal of an employment contract, just like a new applicant or a rehire after a layoff,

2

suffers an adverse employment action when an employment opportunity is denied and is protected from discrimination in connection with such decisions under Title VII and the ADEA." *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 501 (2d Cir. 2009), *superseded by statute on other grounds.* To hold otherwise, would be to "effectively rule that current employees seeking a renewal of an employment contract are not entitled to the same statutory protections under the discrimination laws as prospective employees." *Leibowitz,* 584 F.3d at 500. "[F]ailure to renew an employment arrangement, whether at-will or for a limited period of time, is an employment action." *Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315, 320 (3d Cir. 2008). This is true even if the employer's decision to not renew a contract is a discretionary decision. *Walker v. Bd. of Regents of Univ. of Wis. Sys.*, 300 F.Supp. 2d 836, 852 (W.D.Wis. 2004) (citing *Power v. Summers*, 226 F.3d 815, 821 (7th Cir. 2000)).

The College's argument that adjunct faculty lack an "expectation of continued employment" defeats liability was squarely rejected in *Dunn v. Lyman School District 42-1,* 35 F.Supp.3d 1068, 1081 (S.SD 2014). In that case, the defendant School District argued that "once [the Plaintiff] retired he became a nontenured employee with no expectation of a continuing contract and could therefore be nonrenewed without cause." The Court found such argument unavailing instead following the reasoning in *Leibowitz* and other cases persuasive that, because both the failure to hire a prospective employee and the termination of an at-will employee can constitute an adverse employment action under the ADEA. *Id.* at 1082.

Defendant's reliance on *Strait v. Belcan Engineering,* 911 F. Supp 2d 709 (N.D. Ill. 2012) is misplaced. The court in *Strait* held that the issue for certification is whether a common question exists that can be answered without individual inquiries. However, much like the *Jamie S.* case, whether a member of the proposed *Strait* had any claim at all (i.e. that he or she was the

3

victim of an unlawful policy), depended on a detailed, fact-specific inquiry. The *Strait* plaintiffs could not identify a clear and consistent policy, applicable to all class members, that violated the law until after the court made individualized inquiries into whether each class member was salaried, since a policy would only be unlawful if a class member was salaried, or and administrative or professional employee for FLSA purposes.

In this case, the issue for certification – whether there is a common question that can be answered without individual inquiries – is satisfied. Although the proposed opt-in class worked in different departments at the College with various staffing needs, were supervised by different deans, and had different SURS earnings limitations, none of those factors are relevant. All proposed class members were all covered by the terms of a collective bargaining agreement that set forth the same wages, hours, and conditions of employment policies for each class member. All members of the proposed collective class were "non-affected" SURS annuitants. All proposed class members are over the age of 40. Most importantly, though, all members of the proposed class were subjected to a single, consistently enforced Policy that prevented every member of the proposed class from obtaining re-employment with the College. Named Plaintiff has identified a clear and consistent Policy applicable to all class members that he alleges violated the law.

**II.     CLASS CERTIFICATION UNDER RULE 23 IS APPROPRIATE WHERE THE LIABILITY ON NAMED PLAINTIFF'S CLAIMS CAN BE ESTABLISHED ON A CLASS-WIDE BASIS.**

**A.     Neither the Collective Class nor Rule 23 Class Can be "Fatally Indefinite" Where A List of Class Members is an Exhibit to the Motion for Certification.**

Far from being "fatally indefinite," both the Collective Class and Rule 23 Class are narrowly and precisely defined. Attached to Docket No. 37-7 is Exhibit 38 which is a list of

employees of the College who were affected by the College's Policy not to employ annuitants, including all putative class members. The College's director of Human Resources, Mum Martens, characterized it as "the most accurate list of all the annuitants that were affected by the college's decision not to employ annuitants after July 1, 2015." (Martens Day 2 at 75, Ex. 38). There is no dispute that the people on the list were impacted by the College's uniform Policy, since according to Martens, the "decision not to employ the individuals that we see on Exhibit 38 was solely based on the fact that they were receiving an annuity from SURS." (Martens Day 2 at 90).[1] The proposed classes are not indefinite where an initial class list has already been produced and filed with the court.

### B. The Common Policy of Refusing to Employ Adjunct Annuitants Impacts All Class Members Identically.

To meet the commonality requirement, Dayton must show that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Even a single common question of law or fact will do. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). The key to commonality is whether a classwide proceeding can "generate common answers apt to drive the resolution of the litigation." *Id.* at 350. Because this has always been a part of the Rule 23 inquiry, numerous courts have held that *Wal-Mart* did not change the law regarding class certification. See *Corey H. v. Bd. of Educ. of City of Chi.,* 2012 U.S. Dist. LEXIS 100316 at *5 (N.D. Ill. July 19, 2012) (Gettleman, J.) ("[I]t hardly needs stating that neither [Wal-Mart] nor Jamie S. 'changed' the law on class certification."); see also *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 672 F.3d 482, 487-90 (7th Cir. 2012) (allowing, post-Wal-Mart,

---

[1] It is possible that other individuals applied to the College after July 1, 2015 and were rejected based on their annuitant status. However, to be included in the class, such individuals would need to have actually applied to the College and be rejected. The prerequisite of applying renders this supplemental group definite and ascertainable.

5

class certification for a disparate impact claim challenging company-wide policies allowing brokers to form their own teams and distributing accounts based on broker performance).

Just as with the ADEA claim, the Rule 23 claims arise where the College decided not to renew the contracts of adjunct annuitants on a college-wide basis. *See Walker v. Bd. of Regents,* 300 F. Supp. 2d 836, 852 (W.D. Wis. 2004) (Whether an action is considered a termination or a refusal to re-hire, it is a cognizable injury for the purpose of § 1983); *See also Walker v. Abbott Laboratories,* 340 F.3d 471 (7th Cir. 2003) (at-will employees may bring claims under § 1981); Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 181, 23 Ill. Dec. 559, 563, 384 N.E.2d 353, 357 (1978) ("At will" employees may bring claims of retaliatory discharge under Illinois law); *Palmateer v. Int'l Harvester Co.,* 85 Ill. 2d 124, 128, 52 Ill. Dec. 13, 15, 421 N.E.2d 876, 878 (1981) (same).

The key issue for certification is if every member of the proposed class suffered the same adverse employment action (non-renewal of their contract) for the same reason (because they were annuitants). The College has already admitted this is the case. The College states that "President Lee made an administrative decision that the College would no longer employ any SURS annuitants effective July 1, 2015." (Docket No.43-13, Def. Br. p. 10, citing Lee Tr. 42). The decision was not made on an individualized basis, but affected all SURS annuitants. (*Id.* (citing Dep. Ex. 14)). There was no consideration of a SURS annuitant's status as affected or "non-affected" (i.e. whether the hiring of an individual would result in a monetary penalty to the College). (Martens Day 2 Tr. 74-75, Lee Tr. 23, 60, 72; Smith Tr. 23, 28).

Defendants' claim that "individualized factors" determine which class members have a claim against the College ignores the fact that Defendants' witnesses repeatedly admitted that the only factor taken into account when the adverse employment action (non-renewal of contracts) was taken was their status as non-affected SURS annuitants. According to the College's Vice

6

President of Academic Affairs, the decision to no longer employ annuitants "had nothing to do with job performance" and "nothing to do with specific classes they were teaching or course load." (Hamel Tr. 68-69). The decision was "solely based on the fact that they were receiving an annuity from SURS." (Martens Day 2 Tr. 90; Lee Tr. 42).

The College's reliance on alleged individualized inquiries in monitoring annuitants is immaterial where the issue of monitoring is wholly pretextual. The College never implemented a system that correctly monitored adjunct and part-time faculty and the College's decision to terminate SURS annuitants was not based on the results of its faulty monitoring system. At the time the College made the decision to prohibit the employment of annuitants, Defendants were aware that it had failed implement a monitoring systems that correctly monitored the earnings limitation of annuitants. Rather, the monitoring was based on a flawed understanding of the Return-to-Work law. (Lizalde Tr. 42). At the time the decision was made, Defendants also knew that a significant number of annuitants could never be impacted by the Biss Act. (Hamel Tr. 79, 82-83; Martens Day 2 Tr. 94-96). To avoid penalties under the Biss Act, the College needed to ensure that as of September 1, 2014 it was not employing any affected annuitants, including annuitants who became affected during the 2013-2014 academic year. However, the College never compared the part-time and adjunct faculty's earnings against the 40% earnings limitations. (Lizalde Tr. 96). Reliance on the College's defective monitoring system is misleading, where it was the decision to terminate adjunct annuitants and not the monitoring system that triggers liability in this case.

7

### C. Dayton's Claims Are Typical of Those of the Class, Where He Was Treated the Same as Other Class Members.

Dayton's claims are typical of those of the class where he was subjected to the common Policy of no longer employing SURS annuitants after July 1, 2015. In opposition to Named Plaintiff's motion for class certification, Defendants make no argument that Dayton was impacted differently than other class members as a result of that decision. His employment did not exceed July 1, 2015 nor was any exception granted in his case. As such, his claims are obviously typical of those of all other class members.

The College argues instead is that Dayton's *future* employment prospects with the College are not typical based on the uncertain *future* needs of the College for adjunct faculty. This is not a basis for denying certification where liability is premised on the Policy of not employing adjunct annuitants after July 1, 2015. The typicality requirement is satisfied because the Named Plaintiff's claims arise from the same practice or course of conduct engaged in by the Defendants that gives rise to the claims of the other class members. The Seventh Circuit has held that a "plaintiff's claim is typical if it arises from the same event or course of conduct that gives rise to the claims of the other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992). It is the College's Policy of not employing adjunct annuitants that resulted in Dayton's termination and serves as a bar from future employment. Dayton's individualized employment opportunities in the future are not a material subject of inquiry.

*Oshana v. Coca-Cola,* 472 F.3d 506 (7th Cir. 2006) is wholly distinguishable from the instant case. In *Oshana,* there was a subjective element in determining whether class members were deceived by false advertising. This subjective element is missing from the employment

8

discrimination claims in the instant case. Every class member was identically impacted by the College's decision not to employ SURS annuitants, regardless of their subjective understanding of the College's policy or the terms of their employment. Dayton's claims are typical where they arises from a common Policy that gives rise to the claims of the other class members and his claims are based on the same legal theory.

### D. Defendants Cannot Make a Credible Claim that Dayton is Not an Adequate Class Representative.

A proposed class representative is only inadequate if his interests are "antagonistic or conflicting" with those of the absent class members, *Rosario,* 963 F.2d at 1018, or if he is subject to a defense not applicable to the class as a whole. See *Randall v. Rolls—Royce Corp.,* 637 F.3d 818, 824 (7th Cir. 2011); *Hardy v. City Optical Inc.,* 39 F.3d 765, 770 (7th Cir. 1994); *Koos v. First Nat'l Bank of Peoria,* 496 F.2d 1162, 1164-65 (7th Cir. 1974). Likewise, "[a] person whose claim is idiosyncratic or possibly unique is an unsuitable class member." *Suchanek,* 764 F.3d at 758 (citing Falcon, 457 U.S. at 156-59).

Defendants make no coherent argument that Dayton's claims are idiosyncratic or unique, nor that his interests conflict with those of the absent class members. Dayton suffered precisely the same injury and has precisely the same interest in the outcome of the litigation. To the extent that future employment at the College would be limited by availability of classes within various departments, such determinations are within the control of the college and subject to a collective bargaining agreement governing adjunct faculty. The potential conflict between Dayton and other class members is wholly illusory where the collective bargaining agreement between the College and the OCCAFA makes future teaching assignments subject to seniority within the bargaining unit.

### III. NAMED PLAINTIFF CAN ESTABLISH PREDOMINANCE UNDER RULE 23(B)(3), WHERE LIABILITY IS SUBJECT TO AN ISSUES CLASS UNDER RULE 23(C)(4).

Once Defendants took a adverse employment action by prohibiting employment of adjunct annuitants sufficient to establish liability, the need for individual damages determinations does not defeat class certification under Rule 23(b)(3). *Arreola v. Godinez,* 546 F.3d 788, 801 (7th Cir. 2008). As this Court has already pointed out, under Seventh Circuit authority, "[i]f the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification." *See Vill. of Bedford Park v. Expedia, Inc.,* 2015 U.S. Dist. LEXIS 1012 (N.D. Ill 2015) (J. Kennelly) (*citing Butler v. Sears, Roebuck & Co.,* 727 F.3d 796, 801 (7th Cir. 2013). Fed. R. Civ. P. 23(c)(3) specifically allows the certification of issues only classes.

The issue of damage calculations is largely misstated. Each class member is entitled to damages since they were subject to a common Policy of not renewing their employment contracts as of July 1, 2015. The prior course load and wage rate for each class member is easily identifiable. The collective bargaining agreement specifically sets forth the applicable wage rate for each lecture hour equivalent taught by class members. Calculating damages is a simple function of multiplying the course hours taught by class members in the past by the applicable wage rate. This damage model is neither complex nor difficult to perform.

When a proposed class challenges a uniform policy, as here, the validity of that policy tends to be the predominant issue in the litigation. *Streeter v. Sheriff of Cook County,* 256 F.R.D. 609, 614 (N.D. Ill. 2009); *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 352 (N.D. Ill. 2008). Class certification is appropriate under these circumstances.

**CONCLUSION**

For the foregoing reasons, the Court should grant collective and class certification of Named Plaintiff's claims.

Dated this 11th day of April, 2017.

/s/ Nathan D. Eisenberg
Nathan D. Eisenberg (Ill. Bar No. 6307413)
nde@previant.com
Sara J. Geenen
sjg@previant.com
Erin F. Medeiros
efm@previant.com
THE PREVIANT LAW FIRM, S.C.
310 West Wisconsin Ave. Suite 100 MW
Milwaukee, WI 53203
Telephone: 414/271 4500
Fax: 414/271 6308

(LEAD COUNSEL)

Stephen Yockich (Ill. Bar No. 6181707)
syokich@laboradvocates.com
Dowd, Bloch, Bennett, Cervone, Auerbach & Yokich
8 South Michigan Avenue – 19th Floor
Chicago, IL 60603
Telephone: 312/ 372-1361
Fax: 312/372-6599

(LOCAL COUNSEL)

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I, Nathan D. Eisenberg, an attorney, certify that a copy of Named Plaintiff's Reply Brief in Support of Collective and Class Certification was served on the attorney(s) listed herein, via e-mail on April 11, 2017.

Frank B. Garrett III
Philip H. Gerner III
Jennifer L. Jones
Robbins Schwartz
55 West Monroe Street, Suite 800
Chicago, Illinois 60603

Stephen Yockich
syokich@laboradvocates.com
Dowd, Bloch, Bennett, Cervone, Auerbach & Yokich
8 South Michigan Avenue – 19th Floor
Chicago, IL 60603

George S. Frederick, Esq.
David Weiss, Esq.
george@mkfmlaw.com
david@mkfmlaw.com
Mirabella, Kincaid, Frederick & Mirabella
1737 S. Naperville Raod, Suite 100
Wheaton, IL 60189

/s/ Nathan D. Eisenberg